UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LESLIE SUN                                              CIVIL ACTION

VERSUS                                                  NO. 13-6292

CAROLYN W. COLVIN,                                      SECTION "N" (2)
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Leslie Sun, seeks judicial review pursuant to Section 405(g) of the Social
Security Act (the "Act") of the final decision of the Commissioner of the Social Security
Administration (the "Commissioner"), denying plaintiff's claim for disability insurance
benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under
Title XVI of the Act.  42 U.S.C. §§ 405(g), 423, 1381a.  This matter was referred to a
United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Sun filed an application for DIB on June 20, 2011 and an application for SSI on
July 11, 2011, alleging disability since May 28, 2011, because of a bimalleolar (tibia and
fibular) fracture of the left ankle resulting from an incident of domestic abuse.  (Tr. 127-
38).  After her applications were denied, plaintiff requested reconsideration and alleged
additional impairments of depression, migraines and anxiety attacks.  (Tr. 77).  After her
applications were denied upon reconsideration, she requested a hearing before an
Administrative Law Judge ("ALJ"), which was held on July 20, 2012.  (Tr. 25-44, 75-76,

67-73).  On August 10, 2012, the ALJ issued a decision denying the applications for benefits.  (Tr. 12-20).

Sun requested review by the Appeals Council.  She submitted additional evidence and amended her applications "to request a closed period of disability from the initial fracture of her leg [on] May 18, 2011, through June 4, 2012 when she was known to be finally healed and weightbearing."  (Tr. 238).  The Appeals Council considered the new evidence, but denied review on September 30, 2013, and the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.  (Tr. 1-2).

Plaintiff filed a timely memorandum of facts and law.  Record Doc. No. 15. Defendant filed a timely reply memorandum.  Record Doc. No. 16.

II.    STATEMENT OF ISSUE ON APPEAL

Plaintiff contends that the ALJ made the following error:

A.    The ALJ failed to fully and fairly develop the medical record and made erroneous conclusions about treatment from an incomplete record, resulting in a decision that is not based on substantial evidence.

III.   ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following relevant findings:

1.    Sun has severe impairments consisting of a left ankle fracture.

2.    She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

2

3.     Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of 6 hours in an 8-hour workday, but sit for up to 30 minutes at a time and stand for 20 minutes at a time; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; and balance occasionally.

4.     Although her medically determinable impairments could reasonably be expected to cause the alleged symptoms, Sun's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

5.     Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as interviewer, receptionist and information clerk, and general office clerk.

6.     She has not been under a disability as defined in the Act from May 18, 2011, through the date of the decision.

(Tr. 15-20).

IV.   <u>ANALYSIS</u>

A.   <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  <u>Richard ex rel. Z.N.F. v. Astrue</u>, 480 F. App'x 773, 776 (5th Cir. 2012) (citing <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir. 2005)); <u>Stringer v. Astrue</u>, 465 F. App'x 361, 363 (5th Cir. 2012) (citing <u>Waters v.</u>

Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[2]  Id. §§ 404.1520, 416.920;

---

[1]The relevant law and regulations governing claims for DIB and SSI are identical.  Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)); Baltierra v. Chater, 70 F.3d 1268, 1995 WL 696740, at *1  (5th Cir. Oct. 19, 1995) (citing Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989)); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing Haywood, 888 F.2d at 1467).

[2]The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f), 416.920(f).  To assist

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501

F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461.  The five-step inquiry terminates

if the Commissioner finds at any step that the claimant is or is not disabled.  Id.

    The claimant has the burden of proof under the first four parts of the inquiry.  If

she successfully carries this burden, the burden shifts to the Commissioner to show that

other substantial gainful employment is available in the national economy that the

claimant is capable of performing.  When the Commissioner shows that the claimant is

capable of engaging in alternative employment, the burden of proof shifts back to the

claimant to rebut this finding.  Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

    The court weighs four elements of proof when determining whether there is

substantial evidence of disability:  "'(1) objective medical facts; (2) diagnoses and

opinions of treating and examining physicians; (3) the claimant's subjective evidence of

pain and disability; and (4) the claimant's age, education, and work history.'"  Chrisner

v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d

123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

_____

the Commissioner at this stage, the regulations provide certain tables that reflect major functional and
vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual
functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. Pt. 404,
Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.    Factual Background

At the hearing, the ALJ confirmed that Sun understood her right to representation and that she wanted to waive it, as evidenced by her written waiver that was already in the record.  (Tr. 27-28, 126).  Sun testified that she was 47 years old and a high-school graduate.  She last worked as a hotel housekeeper and had not worked since her alleged onset date of May 18, 2011.  (Tr. 28).

Plaintiff testified that she cannot work because she has not yet been released by her doctor.  She said she cannot walk because she cannot put her left foot down all the way and can only walk on her toes.  She stated that she is on a waiting list to begin the physical therapy recommended by her doctor at her last visit on June 2, 2012.[3]  Sun testified that she had two surgeries within six months and that her first surgery, an open reduction internal fixation of her left ankle, was performed in June 2011 in Atlanta, Georgia to repair a fracture.  She said she had reconstructive surgery on the same ankle at LSU Hospital in New Orleans in December 2011.  She stated that she would next see her doctor on September 19, 2012, and that she is trying to do the home exercises that he recommended at her last appointment.  (Tr. 29).

Sun said that her broken ankle was caused by domestic violence.  She testified that her brother brought her from Atlanta to Louisiana after her first surgery to get her out of

---

[3]According to the medical records, the date was actually June 4, 2012.  (Tr. 328).

her abusive living situation.  She stated that her cast was removed at North Oaks Hospital in Hammond, Louisiana.

Plaintiff said she could not find a doctor who would see her because she did not have insurance, so she went to Lallie Kemp Medical Center in Independence, Louisiana. She testified that Lallie Kemp personnel referred her to LSU in New Orleans, but she had to wait for an appointment at LSU, after which her second surgery was scheduled for December 2011.  She stated that she had seen doctors almost 20 times in 14 months.  She said she sought treatment at North Oaks Medical Center, but they would not refer her to a doctor.  She stated that she went back to North Oaks because one of the screws was coming out of her ankle, but "they wouldn't do anything about it," so she went to Lallie Kemp.  She testified that she applied for Medicaid, but her application was denied.  She said she received a referral list of doctors after her cast was removed and she called several doctors, but none would see her without insurance.  She explained that she did not get medical attention right away after the first surgery for all of these reasons.  (Tr. 30-31).

Sun testified that she had her second surgery in December 2011 and she was put in a walking boot in January 2012.  She said that the walking boot was like a cast and that she had to use crutches with it.  She stated that the boot was removed six to eight weeks later.  She testified that she saw a different orthopedist every time she went to LSU, and that the doctor told her to continue using crutches after she was allowed to

remove the boot.  (Tr. 31- 32).  She said she remained on crutches for two months after the boot was removed, or until sometime in May 2012, because she had to wait two months until she had her next appointment with a doctor.  (Tr. 32-33).[4]

 Sun stated that she cannot walk heel to toe and can only walk half a block.  She said she can stand for only twenty minutes before she has to sit down.  She testified that she cannot put any weight on her left foot and does not know how to walk yet because she has not been to physical therapy.  (Tr. 33-34).  She said that it takes five to ten minutes for her leg to regain proper circulation after she wakes up in the morning, that she loses her balance when she stands up and that her leg swells if she sits for too long.  (Tr. 34-35).  Plaintiff testified that she usually sits in a recliner at home with her foot elevated.  She stated that she can sit for 20 to 30 minutes in a regular chair before the pain becomes "unbearable and uncomfortable" and her lower leg goes numb because of lack of circulation.  She said she has to stand up to relieve the pain and numbness.  She stated that she walked all day when she was an executive housekeeper at a 147-room hotel, where she supervised 13 housekeepers.  (Tr. 36, 40-41).  She said she takes no medications for pain or swelling.

Sun testified that she usually uses an assistance device to walk, but that she did not bring it with her to the hearing.  She said she usually uses a crutch that was prescribed

---

[4]Plaintiff contends in this court that, although she testified that she stopped using crutches in May, it was actually on June 4, 2012, when she last saw a doctor at LSU.

by her doctor after her surgery. (Tr. 36). She stated that she uses two crutches when she goes shopping at Walmart or when she goes to the doctor downtown because she has to walk a lot in those places. (Tr. 36-37). She said she has constant stinging or throbbing pain, and pain when she walks. She testified that she has trouble lifting more than five pounds and cannot carry things like grocery bags in both hands because it puts her off balance. (Tr. 37).

Sun said she has been depressed and stressed because of the abuse and her ankle problems, and she does not sleep well. She initially testified that she was treated for depression at Lallie Kemp. She admitted under additional questioning by the ALJ that, based on her Lallie Kemp medical records, she had not received any treatment and did not want any medication for depression or stress. (Tr. 38).

In response to the ALJ's observation that the record contained no medical records after August 2011, Sun testified that she was confused as to why the record was not complete. She said she had been seen at LSU at least five times since her December 2011 surgery, and had filled out all the paperwork that the Commissioner sent her to obtain the medical records. (Tr. 39). She said that if she had known that the file was incomplete, she would have gone to LSU and requested the records herself. (Tr. 40).

After the vocational expert testified, the ALJ asked Sun if she would be able to work as a receptionist, interviewer or general office clerk with the ability to alternate sitting and standing. Plaintiff testified that she did not know if she could walk around,

get up constantly to go around a desk, or sit at a desk as long as needed.  She said she is

in pain every time she gets up.  (Tr. 42)  She said she stays in her room in her recliner

without getting up until she has to go to the bathroom.  (Tr. 42-43).  She stated that she

has to lean on the dresser when she gets up, shake her foot for a minute to revive the

circulation and then go to the bathroom.  She testified that she prepares her own meals

and that going to the kitchen and back is about half a block.  She said she has pain when

she goes to the kitchen and has difficulty carrying things back to her room.  She stated

that she has not driven since her injury because she is afraid that she might get stuck

somewhere if something happens. (Tr. 43).

C.   Vocational Expert Testimony

A vocational expert, Patricia Knight, testified at the hearing that plaintiff's past

relevant work as a hotel maid was light and unskilled, and as a housekeeper supervisor

was light and skilled.  (Tr. 40).  The ALJ posed a hypothetical of an individual who can

lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for

six out of eight hours; stand for only 20 minutes at a time and sit for only 30 minutes at

a time; occasionally climb ramps and stairs; cannot use ropes, ladders or scaffolds; and

balance occasionally.

The vocational expert testified that such an individual would not be able to

perform plaintiff's past relevant work.  She stated that Sun did not have any transferable

skills.  (Tr. 41).  Knight testified that there are unskilled, sedentary positions available

11

in Louisiana and the United States that the hypothetical person could perform, such as interviewer, reception and information clerk, and general office clerk.  (Tr. 41-42).

The ALJ posed a second hypothetical in which the weight the person could lift and carry was reduced to 10 pounds occasionally.  Knight stated that such an individual could perform the same sedentary jobs.  (Tr. 43).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 15, 17).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

Sun was not represented at the hearing.  She argues that the ALJ failed in his heightened duty to develop the record fully and fairly and that he made erroneous conclusions about her treatment from an incomplete medical record.  She contends that his finding that "the record contains very minimal evidence of medical treatment since the alleged onset date and no evidence of medical treatment since August 2011" (Tr. 17) is not supported by substantial evidence because medical records existed regarding her second surgery in December 2011 and follow-up treatment through June 4, 2012, but the ALJ improperly failed to obtain the records.  The ALJ accepted plaintiff's testimony that she had a second surgery and follow-up treatment through May 2012, but the quoted

12

language above was one of several reasons he gave why he found her not credible concerning the intensity, persistence and limiting effects of her symptoms.  Id.

"Because [plaintiff] was not represented by counsel at the hearing, the ALJ was under a heightened duty to scrupulously and conscientiously explore all relevant facts." Castillo v. Barnhart, 325 F.3d 550, 552-53 (5th Cir. 2003) (citing Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996)); accord Winston ex rel. D.F. v. Astrue, 341 F. App'x 995, 997 (5th Cir. 2009) (citing James v. Bowen, 793 F.2d 702, 704 (5th Cir. 1986)).  When the ALJ fails in this duty, he does not have sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence.  Id.; Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000); McMillian v. Colvin, No. 4:12-CV-661-A, 2014 WL 61172, at *12 (N.D. Tex. Jan. 6, 2014) (citing Brock, 84 F.3d at 728; Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)).  "Notwithstanding this special duty, the burden to demonstrate a disability is always on the claimant."  Winston ex rel. D.F., 341 F. App'x at 997 (citing Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989)).

An ALJ's failure to develop the record fully does not automatically compel reversal.  Reversal is appropriate only if plaintiff shows she was prejudiced as a result of the insufficient record.  Jones v. Astrue, 691 F.3d 730, 734-35 (5th Cir. 2012), cert. denied, 133 S. Ct. 953 (2013) (quoting Castillo, 325 F.3d at 552) (citing Shinseki v. Sanders, 556 U.S. 396, 409 (2009); Carey, 230 F.3d at 142); Brock, 84 F.3d at 728; Kane, 731 F.2d at 1220.  "To establish prejudice, a claimant must show that he could and

would have adduced evidence that might have altered the result." <u>Brock</u>, 84 F.3d at 728 (quotation omitted); <u>accord</u> <u>Jones</u>, 691 F.3d at 734; <u>Castillo</u>, 325 F.3d at 552.

After the ALJ rendered his decision, Sun retained an attorney who acquired the missing LSU medical records and submitted them to the Appeals Council. The Appeals Council considered the additional evidence and "considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of evidence of record. We found that this information does not provide a basis for changing the [ALJ's] decision." The Appeals Council therefore denied plaintiff's request for review. (Tr. 1-2).

Because plaintiff bears the burden of proving that she suffers from a disability under the first four parts of the sequential inquiry, she generally has the duty to obtain her medical records. 20 C.F.R. § 404.1512(a); <u>Reynaud v. Astrue</u>, 226 F. App'x 401, 403 (5th Cir. 2007) (citing <u>Wren</u>, 925 F.2d at 128); <u>Gonzalez v. Barnhart</u>, 51 F. App'x 484, 2002 WL 31319423, at *1 (5th Cir. Oct. 4, 2002) (citing <u>Thorton v. Schweiker</u>, 663 F.2d 1312, 1316 (5th Cir. 1981)); <u>McMillian</u>, 2014 WL 61172, at *12. If she is unable to provide sufficient medical evidence, the ALJ will make a decision based on the information available. 20 C.F.R. § 404.1516; <u>Winston ex rel. D.F.</u>, 341 F. App'x at 997 (citing <u>Anderson</u>, 887 F.2d at 634); <u>Reynaud</u>, 226 F. App'x at 403 (citing <u>Wren</u>, 925 F.2d at 128).

The Commissioner "will make every reasonable effort to help [the claimant] get medical reports from your own medical sources when you give us permission to request

the reports."  20 C.F.R. § 404.1512(d).  "Every reasonable effort" means that the Commissioner will request evidence from a claimant's medical source and, if the medical evidence is not timely received, will make one follow-up request to obtain it.  Id. § 404.1512(d)(1).

The Commissioner in the instant case tried to obtain Sun's missing medical records before the hearing.  After receiving updated medical information and release authorization forms from Sun in early 2012, the agency sent written requests for medical records to LSU Interim Hospital and the Medical Center of Louisiana at New Orleans (a division of LSU) on April 27, 2012, and then sent a second request to each provider on May 24, 2012.  (Tr. 215-22, 227-33).  No response was received before the hearing on July 20, 2012, or the ALJ's decision on August 10, 2012.  The Commissioner therefore fulfilled his regulatory duty by requesting the medical records twice.

Sun does not contend that the ALJ failed to question her scrupulously and conscientiously at the hearing about the medical evidence in the record and her medical history, functional impairments and activities of daily living.  Such questioning has been held sufficient to afford an unrepresented claimant a full and fair hearing.  E.g., Castillo, 325 F.3d at 553; McMillian, 2014 WL 61172, at *12 (citing Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991); James v. Bowen, 793 F.3d 702, 704-05 (5th Cir. 1986); McConnell v. Schweiker, 655 F.2d 604, 606 (5th Cir. Unit B 1981)).

Sun argues, however, that she was prejudiced by the ALJ's failure to obtain the LSU medical records before rendering a decision.  She contends that, if the ALJ had considered those records, he might have found that she met the requirements of Listing 1.06 for disability per se based on fracture of the femur or tibia.  She seeks either a remand to the Commissioner for additional consideration of the evidence, or a reversal of the ALJ's decision and a finding that she meets Listing 1.06 and is entitled to benefits for a closed period of disability from May 18, 2011 through June 4, 2012.

"If additional evidence is presented while the case is pending review by the Appeals Council, courts of appeals customarily review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." Higginbotham v. Barnhart ("Higginbotham II"), 163 F. App'x 279, 282 (5th Cir. 2006) (citing Higginbotham v. Barnhart ("Higginbotham I"), 405 F.3d 332, 337-38 (5th Cir. 2005); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991); Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992)).  The "after-submitted evidence considered by the Appeals Council constitutes part of the record upon which the final decision on eligibility is based, and . . . all record evidence, irrespective of its submission date, is subject to district court review" under the substantial evidence standard.  Beck v. Barnhart, 205 F. App'x 207, 214 (5th Cir. 2006) (citing Higginbotham I, 405 F.3d at 337).  The Appeals Council need not engage in a detailed discussion of the new evidence.  Higginbotham I, 405 F.3d at 335 n.1, 337.

Thus, district courts in the Fifth Circuit have concluded that the court should review the entire record to determine whether "the Appeals Council has failed to properly evaluate new medical evidence which is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination" and requires that the case "be remanded so that the Appeals Council fully can evaluate the [after-submitted evidence] as required by law." Booker v. Astrue, No. 3:10-CV-1940-P, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011), report & recommendation adopted, 2011 WL 4048408 (N.D. Tex. Sept. 12, 2011) (citations omitted); see also Jones v. Astrue, 228 F. App'x 403, 407 (5th Cir. 2007) ("Jones's new evidence [submitted to the Appeals Council] did not so contradict earlier evidence that a 'weighing' of new and old evidence would be required. . . .  [The new] report was . . . not inconsistent with" the medical evidence that the ALJ had considered.).

This court therefore must determine whether the ALJ's decision is still supported by substantial evidence in light of the additional evidence that Sun presented to the Appeals Council. Payne v. Astrue, No. 11-544, 2012 WL 1090054, at *4 (E.D. La. Feb. 27, 2012), report & recommendation adopted, 2012 WL 1089959 (E.D. La. Mar. 30, 2012) (citing Higginbotham I, 405 F.3d at 337); Williams v. Comm'r of Soc. Sec., No. 1:07CV643, 2008 WL 4335570, *12 (S.D. Miss. Sept. 17, 2008)).  The court finds that the Appeals Council did not err in holding that the new evidence did not provide a basis

17

for reversal, and that the ALJ's decision was based upon substantial evidence from the record considered as a whole.  <u>Beck</u>, 205 F. App'x at 214.

As noted, plaintiff contends that the new evidence would have altered the ALJ's decision because it demonstrates that she meets Listing 1.06.  Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); <u>McCuller v. Barnhart</u>, 72 F. App'x 155, 158 (5th Cir. 2003); <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir. 1990); <u>McKnight v. Astrue</u>, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), <u>report & recommendation adopted</u>, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), <u>aff'd</u>, 340 F. App'x 176 (5th Cir. 2009).  "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability making further inquiry unnecessary."  <u>Anderson v. Astrue</u>, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), <u>report & recommendation adopted</u>, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990); <u>Falco</u>, 27 F.3d at 162).

Listing 1.06 provides that a person is disabled if she has a fracture of the femur, tibia, pelvis, or one or more of the tarsal bones, <u>with</u>:

A.  Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
<u>and</u>

18

B.  Inability to ambulate effectively, as defined in 1.00B2b, <u>and</u> return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06 (emphasis added).

In pertinent part, Section 1.00(B)(2)(b) defines "inability to ambulate effectively" as follows:

> (1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
> (2) . . . . Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes . . . .

<u>Id.</u> § 1.00(B)(2)(b).

Sun cites the April 11, 2012, treatment notes of Melissa Gorman, M.D., whom plaintiff saw four months after her second, "revision surgery . . . after she had malunion from prior" surgery.  Dr. Gorman stated that x-rays of Sun's left ankle on that date reveal "still no union."  (Tr. 331).  Although this statement arguably meets paragraph (A) of Listing 1.06, substantial evidence supports a finding that plaintiff did not meet the paragraph (B) requirements because her return to effective ambulation occurred within 12 months of her alleged onset date of May 18, 2011.

Plaintiff testified that she remained on crutches until sometime in May 2012. (Tr. 32-33). She now argues that her testimony was mistaken, that she actually stopped using crutches on June 4, 2012, the last time that she saw a doctor, and that she could not ambulate effectively until that date. Regarding ambulation, Dr. Gorman stated on April 11, 2012: "Today, we will <u>allow her to begin weight-bearing</u> in her CAM [Controlled Ankle Movement] boot. We will set her up with physical therapy for range of motion and straightening of the right [sic] ankle as well as give her exercises to perform at home." <u>Id.</u> (emphasis added). On June 4, 2012, Peter C. Krause, M.D., noted that Sun "is doing well at this time. <u>She has been weightbearing as tolerated</u> in her CAM walking boot. . . . Pain has been controlled with just [nonsteroidal anti-inflammatory drugs]." (Tr. 329). These records are substantial evidence upon which the Appeals Council could rely to find that Sun's return to effective ambulation began in April and was completed in May 2012, as she testified, within 12 months of her alleged onset date of May 18, 2012. Based on the record as a whole, the Appeals Council could find that she did not meet Listing 1.06(B).

Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ performed his heightened duty to develop the record fully and fairly because Sun was not represented by counsel. She was not prejudiced by the absence of the LSU medical records at the time of the ALJ's decision because she submitted the

20

records to the Appeals Council, which considered them.  Substantial evidence supports the ALJ's finding that she does not meet Listing 1.06.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[5]

New Orleans, Louisiana, this ___16th___ day of July, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[5]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

21